IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA   :

    v.   :   CRIMINAL NO. 09-744-4-SD

MOUSSA ALI HAMDAN   :

**GOVERNMENT'S MOTION TO DISMISS
DEFENDANT'S MOTION UNDER 28 U.S.C. 2255**

The United States of America, by its attorneys, Zane David Memeger, United States Attorney for the Eastern District of Pennsylvania, and Nancy Beam Winter and Vineet Gauri, Assistant United States Attorneys, moves to dismiss defendant's motion under 28 U.S.C. § 2255 based on the reasons stated below.

**I.  Procedural Background**

Defendant Moussa Ali Hamdan was charged in Count 3 and Counts 5 through 31 of the Indictment with conspiracy to provide material support to Hizballah, conspiracy to deal in counterfeit securities, dealing in counterfeit securities, conspiracy to commit passport fraud, passport fraud, conspiracy to transport stolen goods, transporting stolen goods, conspiracy to traffic in counterfeit goods, trafficking in counterfeit goods, trafficking in counterfeit goods and services, false statements to government officials, and conspiracy to commit

passport fraud. These allegations stated violations of 18 U.S.C. §§ 2339B, 371, 473, 1543, 2314, 2320, and 1001.

On April 20, 2012, Hamdan entered a guilty plea to all charges, pursuant to a written plea agreement with the government. The agreement was a cooperation plea agreement in which Hamdan agreed, among other things, to cooperate and provide truthful information. Under the plea agreement, if the government concluded that Hamdan fulfilled his obligation of cooperation as set forth in the plea agreement, the government would make known the full extent of his cooperation and file a motion to allow the Court to depart from the Sentencing Guidelines pursuant to Sentencing Guideline § 5K1.1. In the agreement, Hamdan further agreed that, with limited exceptions, he would neither appeal nor present any collateral challenge to his conviction or sentence. Specifically, the appellate and collateral attack waiver (hereinafter "appellate waiver") stated:

> In exchange for the undertakings made by the government in entering this plea agreement, the defendant voluntarily and expressly waives all rights to appeal or collaterally attack the defendant's conviction, sentence, or any other matter relating to this prosecution, whether such a right to appeal or collateral attack arises under 18 U.S.C. § 3742, 28 U.S.C. § 1291, 28 U.S.C. § 2255, or any other provision of law.
>
> a.   Notwithstanding the waiver provision above, if the government appeals from the sentence, then the defendant may file a direct appeal of his sentence.
>
> b.   If the government does not appeal, then notwithstanding the waiver provision set forth in this paragraph, the defendant may file a direct appeal but may raise only claims that:

> (1) the defendant's sentence on any count of conviction exceeds the statutory maximum for that count as set forth in paragraph 4 above;
>
> (2) the sentencing judge erroneously departed upward pursuant to the Sentencing Guidelines; and/or
>
> (3) the sentencing judge, exercising the Court's discretion pursuant to United States v. Booker, 543 U.S. 220 (2005), imposed an unreasonable sentence above the final Sentencing Guideline range determined by the Court.
>
> If the defendant does appeal pursuant to this paragraph, no issue may be presented by the defendant on appeal other than those described in this paragraph.

At the guilty plea colloquy, this provision was thoroughly reviewed with Hamdan by the Court, and the Court assured that the plea was entered knowingly and intelligently, with regard to the plea in general and the appellate waiver in particular. *See* transcript of colloquy at pages 44-46 (discussion of waiver).

On October 17, 2013, the Court imposed sentence. The Court determined that the offense level under the advisory Sentencing Guidelines was 35, and the defendant's criminal history category was VI, producing an advisory sentencing range of 292-365 months.[1] Based on Hamdan's substantial assistance in the investigation of another, the government moved, pursuant to the plea agreement, for a departure from the Sentencing Guidelines pursuant to Section 5K1.1. The

---

[1] It should be noted that the offense level was stipulated to by both parties in the written plea agreement. Thus, at the time of the plea, Hamdan was well aware that the guideline range he faced at sentencing was 292 to 365 months' imprisonment.

Court granted that motion. The Court then dramatically departed from the advisory range and imposed a sentence of 132 months' imprisonment.

The sentence was thus less than the statutory maximum of 275 years, and not only did not represent an upward departure or variance from the applicable guideline range, but, rather, represented a significant downward departure from the applicable guideline range. In short, the circumstances outlined in the plea agreement in which an appeal or collateral attack would be permitted did not occur. Nevertheless, in July 2013, Hamdan filed an appeal. In December 2013, the government filed a motion for summary affirmance based on Hamdan's appellate waiver. In March 2014, Hamdan filed a motion to voluntarily dismiss his appeal, which the Third Circuit Court of Appeals granted.

## II. Controlling Law

A claim that counsel was ineffective in connection with a plea is appropriate for a motion under 28 U.S.C. § 2255 and is not foreclosed by a defendant's waiver of appellate rights or collateral review. *United States v. Shedrick*, 493 F.3d 292, 298 (3d Cir. 2007); *United States v. Wilson*, 429 F.3d 455, 458 (3d Cir. 2005).

Still, a defendant's claim of ineffectiveness is subject to a stringent test. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686 (1984). In keeping with its focus on

the adversarial process, the Court in *Strickland* held that a claim of ineffective assistance of counsel has two components: inadequate performance by counsel, and prejudice resulting from that inadequate performance.

The first part of the *Strickland* test requires the defendant to show "that counsel's performance was deficient.   This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." 466 U.S. at 687.   The governing performance standards depend in large part on the standards set by the legal profession. "The proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Id.* at 688.

In applying the "professional norms" standard, however, "[j]udicial scrutiny of counsel's performance must be highly deferential," and courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." 466 U.S. at 689. Accordingly, the Court in *Strickland* held, "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.*

Even if the defendant satisfies the first part of the *Strickland* test, by showing that his attorney failed to satisfy professional standards, he is not entitled to relief unless he can also satisfy the second part of the test, by showing that counsel's unprofessional errors actually prejudiced the defense. 466 U.S. at 687.

The defendant has the burden of establishing prejudice, and "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694; *Deputy v. Taylor*, 19 F.3d 1485, 1493 (3d Cir. 1994). A reasonable probability means a probability "sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Thus, the gravamen of the *Strickland* inquiry remains "whether, despite the strong presumption of reliability, the result of the particular proceeding is unreliable because of a breakdown in the adversarial process that our system counts on to produce just results." *Id.* at 696.

In *Hill v. Lockhart*, 474 U.S. 52 (1985), the Supreme Court delineated the manner in which *Strickland*'s two-prong test is to apply where counsel's alleged ineffective assistance is erroneous plea advice. With respect to the performance prong, "[w]here ... a defendant is represented by counsel during the plea process and enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.'" *Hill*, 474 U.S. at 56, quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970). The prejudice prong "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59.

### III. Hamdan's Motion

#### A. Hamdan's "Coerced" Plea

In his present motion, Hamdan claims that he told his attorney that he wanted to contest the terrorism charge, but his attorney purportedly coerced him to lie and enter a guilty plea to the charge. Motion at 8. However, when a defendant alleges that he would not have entered the plea absent counsel's deficient advice, the defendant must provide convincing evidence to support the argument. *See, e.g., Parry v. Rosemeyer*, 64 F.3d 110, 118 (3d Cir. 1995) ("A defendant alleging ineffective assistance of counsel in the guilty plea context must make more than a bare allegation that but for counsel's error he would have pleaded not guilty and gone to trial"), citing *Armstead v. Scott*, 37 F.3d 202, 210 (5th Cir. 1994); *United States v. Thomas*, 221 F.3d 430, 438 (3d Cir. 2000) (stating that vague and conclusory grounds for habeas relief are subject to summary dismissal).

Here, Hamdan offers no factual support for his bald assertion that his attorney coerced him to admit that he knew co-defendant Dib Hani Harb.[2] Motion at 8. Moreover, Hamdan's claim flies in the face of his sworn admissions

---

[2] Of course, a guilty plea is not "coerced and invalid" merely "if influenced by the fear of a possibly higher penalty for the crime charged if a conviction is obtained after the State is put to its proof." *Brady v. United States*, 397 U.S. 742, 750-51 (1970). After all, "[f]or a defendant who sees slight possibility of acquittal, the advantages of pleading guilty and limiting the probable penalty are obvious – his exposure is reduced, the correctional processes can begin immediately, and the practical burdens of a trial are eliminated." *Id.* at 752.

at his change of plea hearing that he had numerous personal and telephonic conversations with Harb regarding their planned fabrication and sale of counterfeit currency and that Hamdan was well-aware of Hizballah's crucial role in that endeavor. *See, e.g.*, government's change of plea memorandum at 11 (September 18, 2008 meeting between Hamdan, Harb, and Confidential Human Source ("CHS") in which Hamdan introduced CHS as a big supporter of Hizballah in order to establish CHS's bona fides), 13-15 (Hamdan called Harb on November 11, 2008, November 25-26, 2008, and December 1, 2008 to discuss Hizballah's approval of their counterfeiting operation and other details), 15 (Hamdan gave Harb's cellular telephone number to CHS on December 12, 2008 to confirm that counterfeit money had been seized by Lebanese authorities), 16 (on December 18, 2008, Hamdan informed CHS how Harb foolishly placed all of the counterfeit money in one wedding album; Hamdan instructed CHS not to call Harb directly anymore), 17 (recorded April 2009 meeting in Florida between Hamdan, Harb, CHS and undercover agent to coordinate the large purchase of counterfeit money from Hizballah), 30-33 (Hamdan's June 2010 post-Miranda statements in Paraguay in which he admitted that Harb was his connection for acquiring counterfeit currency generated by Hizballah for profit).

Courts have roundly rejected defendants' challenges to their guilty pleas based on similarly contradictory claims. *See United States v. Williams*, 2008 WL 1820932, at *4 (E.D.Pa. April 23, 2008) (Diamond, J.) (defendant may not nullify an appellate waiver simply by alleging ineffective assistance of counsel), citing

*United States v. Robinson*, 244 Fed. Appx. 501, 503 (3d Cir. 2007) (not precedential) (invalidating appellate waiver where ineffective assistance of counsel claim was unsupported by the record would "mak[e] a mockery of the waiver [defendant] signed"); *see also United States v. Rodriguez- Jimenez*, 484 F. App'x 645, 648-49 (3d Cir. 2012) (non-precedential) ("no error" where defendant's "claim that agents threatened his wife directly contradicted his prior sworn testimony ... that his plea was not coerced"); *United States v. Gonzalez*, 647 F.3d 41, 60-61 (2d Cir. 2011) (affirming denial of motion to withdraw where defendant claiming coercion had testified and signed form disclaiming threats and coercion); *United States v. Ebel*, 299 F.3d 187, 192 (3d Cir. 2002) (rejecting claim of Rule 11 error where defendant "stated in his plea colloquy that no threats or promises 'whatsoever' had been made to induce him to plead guilty").

### B. Hamdan's "Actual Innocence" and the Government's "Sentencing Entrapment"

Hamdan's other claims are also baseless. He claims that he is "actually innocent" of the terrorism charge, and that it was presented only as "sentencing entrapment." Motion at 2-6. This claim is foreclosed not only by his appellate waiver, but by his guilty plea. Indeed, "[w]hen a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." *Tollett v. Henderson*, 411 U.S. 258, 267 (1973). Thus, "a criminal

defendant's unconditional, knowing, and voluntary plea of guilty waives all non-jurisdictional issues." *Washington v. Sobina*, 475 F.3d 162, 165 (3d Cir. 2007); *see United States v. Hammadi*, 737 F.3d 1043, 1049 (6th Cir. 2013) (defendant's claim of "sentencing entrapment" is non-jurisdictional and waived by his guilty plea); *United States v. Dungee*, 228 F. App'x 298, 303 (4th Cir. 2007) (not precedential) ("A knowing and voluntary guilty plea conclusively establishes the elements of the offense and the material facts necessary to support the conviction, and constitutes a waiver of all nonjurisdictional defects, such as claims of actual innocence.") (internal quotations omitted).[3]

---

[3] There are three elements to be considered when the government invokes an appellate waiver and a defendant contends the waiver does not apply: (1) whether the waiver of the right to appeal her sentence was knowing and voluntary; (2) whether one of the specific exceptions set forth in the agreement prevents the enforcement of the waiver; and (3) whether enforcing the waiver would work a miscarriage of justice. *United States v. Goodson*, 544 F.3d 529, 536 (3d Cir. 2008).

As the plea transcript demonstrates, the plea was knowing and voluntary. The Court addressed the waiver with Hamdan, and also assured more broadly that he was competent, that the plea agreement was explained to him, and that he had a full opportunity to discuss the agreement with counsel and make an informed decision. The Court's determination that the plea in general and the waiver in particular were knowing and voluntary was based on its assessment of Hamdan's answers and demeanor and was well-grounded in the record. Indeed, the voluntariness of his appellate waiver is confirmed by the fact that he reaped substantial benefits from the plea agreement. The government agreed to consider Hamdan's cooperation, and ultimately filed a departure motion on his behalf. This action resulted in a huge reduction in sentence below the advisory guideline range that Hamdan faced. It is therefore clear why Hamdan willingly agreed to the appellate waiver which the government proposed as part of the bargain.

Second, none of the narrow exceptions in the waiver applied in this case. Specifically, the plea agreement permitted the presentation only of claims that a

Further, a petitioner seeking habeas corpus relief must demonstrate that his conviction is the result of "a fundamental defect which inherently results in a complete miscarriage of justice [or] an omission inconsistent with the rudimentary demands of fair procedure." *Reed v. Farley*, 512 U.S. 339, 348 (1994), quoting *Hill v. United States*, 368 U.S. 424, 428 (1962). Where no objection is raised at trial and on appeal, the petitioner "must show both (1) 'cause' excusing his double procedural default, and (2) 'actual prejudice' resulting from the errors of which he complains." *United States v. Frady*, 456 U.S. 152, 168 (1982). The "cause" excusing the procedural default can be ineffective assistance of counsel. *United States v. Pelullo*, 399 F.3d 197, 223 (3d Cir. 2005).

Here, Hamdan concedes this his claims were procedurally defaulted by not raising them on appeal. Motion at 2-3. To the extent that Hamdan claims the "cause" for this default was ineffective assistance of his appellate counsel in

---

sentence exceeded the statutory maximum on any count, that the Court imposed an upward departure in the guideline calculation, or that the court imposed an upward variance from the guideline range. As explained earlier, none of those circumstances occurred.

Third, the government cannot conceive of an issue falling within the narrow miscarriage of justice exception. *See Wilson*, 429 F.3d at 458 (the miscarriage of justice exception "will be applied sparingly and without undue generosity"). Hamdan pleaded guilty to and admitted the charges, the government moved, pursuant to the plea agreement between the government and Hamdan, for a departure from the Sentencing Guidelines pursuant to Section 5K1.1, the Court granted that motion, and the Court then imposed a sentence that represented a dramatic departure from the advisory guideline range (a sentence that may be presumed reasonable, *Rita v. United States*, 551 U.S. 338, 347 (2007)). Because the waiver was entered knowingly and voluntarily, and there is no apparent miscarriage of justice, "[e]nforcing the waiver is in line with justice, not a miscarriage of it." *United States v. Mabry*, 536 F.3d 231, 244 (3d Cir. 2008).

purportedly advising him to dismiss his appeal, Hamdan must then meet *Strickland*'s prejudice prong by showing that "the neglected claim would have had a reasonable probability of success on appeal." *Duhamel v. Collins*, 955 F.2d 962, 967 (5th Cir. 1992); *Boliek v. Bowersox*, 96 F.3d 1070 (8th Cir. 1996). But Hamdan cannot show prejudice because, as outlined above, his claims of actual innocence and sentencing entrapment are foreclosed by his guilty plea and appellate waiver.

### C. No Hearing is Required

Hamdan does not even merit a hearing on any of these issues, since he has merely made bald assertions in his motion. In *Zettlemoyer v. Fulcomer*, 923 F.2d 284, 301 (3d Cir. 1991), the Third Circuit stated that a hearing is not required when a Section 2255 petitioner provides nothing more than "bald assertions and conclusory allegations." Nor is an evidentiary hearing required whenever a defendant who pleaded guilty challenges the validity of his plea. *United States v. Mativa*, 112 Fed. Appx. 226, 228 (3d Cir. 2002) (not precedential) (no hearing required where defendant's allegations are merely conclusory); *see also United States v. Akbar*, 181 F.App'x 283, 286 (3d Cir. 2006) (not precedential) (enforcing waiver despite defendant's generalized claims of ineffective assistance, where the record did not indicate that defendant could prevail on this claim). The Court should summarily deny a hearing to Hamdan.

## IV. Conclusion

For the reasons stated above, the government respectfully requests that the Court dismiss Hamdan's motion.

                    Respectfully yours,

                    ZANE DAVID MEMEGER
                    United States Attorney

                    */s Vineet Gauri*
                    NANCY BEAM WINTER
                    VINEET GAURI
                    Assistant United States Attorneys

## CERTIFICATE OF SERVICE

I hereby certify that this pleading has been served by first class mail upon the defendant:

>Moussa Hamdan
>Reg. No. 61846-066
>FCI McKean
>PO Box 8000
>Bradford, PA 16701

>*/s Vineet Gauri*
>VINEET GAURI
>Assistant United States Attorney

DATED:   August 28, 2014.